## Joe Mier v. The State.

No. 14956.   Delivered April 27, 1932.

The opinion states the case.

*Shivers, Baker & Shivers,* of Port Arthur, and *C. B. DeBellevue,* of Crowley, La., for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

HAWKINS, JUDGE.—Appellant stands convicted of the murder of Moise Boudreaux, punishment being five years in the penitentiary.

On the night of the 25th of August, 1931, Mrs. Guidry gave at her residence in Port Arthur a dance for some of her neighbors and friends. Present at the dance was one Menard, a relative of deceased. Some twelve or fifteen years before the date of the homicide, and in the state of Louisiana, Menard and appellant had some trouble which, from the record, seems not to have been of a serious nature. On the night of the homicide Menard was drinking. He went to appellant and told him if it were not for his glasses he (Menard) would "punch" him because of this old trouble. In his testimony Menard says he was mad at appellant and wanted to raise a disturbance with him. When Menard threatened to "punch" appellant the latter pushed him away. This caused some disturbance and another guest caught Menard by the arm and led him from the room. At this point deceased came up behind appellant and asked what the trouble was about. According to the state's witnesses appellant told him if he would come outside he (appellant) would show him what the trouble was; that when they got outside appellant, without further

provocation, shot deceased twice, which resulted in his almost immediate death. The version of the transaction by appellant and his witnesses was that when deceased came up and asked what the trouble was he (deceased) commenced to kick and strike appellant, whereupon appellant backed out of the house, followed by deceased; that deceased had hold of appellant when the first shot was fired. The state's evidence on this point flatly contradicts that of appellant and his witnesses, being to the effect that deceased did not strike or kick appellant at any time, and did not have hold of him, and at the time he was shot was some eight feet distant from appellant. It is not contended by appellant that deceased was armed or that appellant at any time saw deceased with any weapon. On the contrary, appellant admits that he did not see any weapon in deceased's hands at any time. Menard was not present at the time of the killing, he having been taken out of the house by a different door than the one out of which appellant and deceased went. On his examination appellant testified: "When I heard them call for Menard,—holler 'Menard' I was afraid. I shot Mr. Boudreaux to save my life and I did not want him to kill me and I was afraid. I shot twice. The first time I shot he turned me loose." In the cross-examination of appellant appears the following: "I haven't seen fit to change my testimony quite a bit in this trial from what it was in the last trial—not me. On the former trial of this case, when my lawyer asked it why I shot Boudreaux, I answered to this effect—that I had heard what Menard was going to do to me just before the shooting took place. I was afraid they would kill me. As to whether when I was asked what it was I thought they were going to do, I answered that I thought by that they were plotting to make me leave the dance because I was a stranger, and that is why I shot Boudreaux, and that is why I said I shot him on the last trial—it seemed like that was what they wanted to do. That is not why I said in the last trial I killed this man. I killed him because I was afraid."

The motion for new trial consists of thirteen paragraphs. Beginning with the third paragraph and in each succeeding one appellant has set up various things alleged to have occurred on the trial which he claims to have been erroneous, and to which he avers in his motion he excepted at the time. We find eleven bills of exception in the record. The first begins with these words, "Be it remembered: that upon the trial of the above styled and numbered cause, the court erred to the prejudice of the defendant in failing and refusing to grant the defendant a new trial because of the errors pointed out and shown in paragraph three (3) of the motion for new trial, which is as follows:" Here said paragraph of the motion is copied in full. The bill then concludes as follows: "To the action of the court in refusing to grant the motion for new trial the defendant in open court excepted, and now tenders this his bill of exception number one, and asks that the same be approved and ordered filed,

as a part of the record in this cause." The other bills of exception are exactly alike in their beginning and ending, but each one embraces a copy of a separate paragraph of the motion for new trial.

In none of the bills does the trial judge certify that the things set up in various paragraphs of the motion in fact occurred. They all amount to no more than a certificate of the judge that appellant set up in his motion for new trial certain complaints which are in no wise verified in the bills, and reserved exception because the motion for new trial was overruled. The whole series of bills present no more than exception to the act of the court in overruling the motion for new trial.

A complaint of matters occurring during the trial cannot be brought forward for review by setting them up in the motion for new trial, and reserving exception to overruling the motion. It is different where some question not before the court in the trial is raised and presented in the motion. See Cooke v. State, 95 Texas Crim. Rep., 553, 255 S. W., 187; Matthews v. State, 98 Texas Crim. Rep., 404, 266 S. W., 150; Morgan v. State, 115 Texas Crim. Rep., 14, 27 S. W. (2d) 208, in which many other cases are cited. Gann v. State, 109 Texas Crim. Rep., 640, 6 S. W. (2d) 751; Davis v. State, 110 Texas Crim. Rep., 605, 10 S. W. (2d) 116.

Under the authorities cited, and many others to which they refer, the questions thought to be here presented are not properly before us.

The judgment is affirmed.

*Affirmed.*